JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Brooke Sayers, as p/g of J.B., a minor, Khanye Sutton, Dominiona Wells, and Destini Wilson.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

Connexin Software, Inc. and Goldsboro Pediatrics, P.A.

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [x] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: [Nature of Suit Code Descriptions.](#)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' | Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 340 Marine | | | [ ] 840 Trademark | [ ] 460 Deportation |
| | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(d)

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

[x] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND:  [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
Dec 21, 2022

SIGNATURE OF ATTORNEY OF RECORD
/s/ Kevin Clancy Boylan, Esq

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| BROOKE SAYERS, as parent and general guardian of J.B., a minor, KHANYE SUTTON, DOMINIONA WELLS, and DESTINI WILSON | ) ) ) ) |
| _Plaintiff(s)_ | ) |
| v. | )     Civil Action No. |
| CONNEXIN SOFTWARE, INC. & GOLDSBORO PEDIATRICS, P.A. | ) ) ) |
| _Defendant(s)_ | ) ) |

**SUMMONS IN A CIVIL ACTION**

To: _(Defendant's name and address)_  CONNEXIN SOFTWARE, INC.
(Cogency Global, Inc.-commerical registered agent)
600 North 2nd Street
Harrisburg, PA 17101

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____

_____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

     ❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

     ❐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

     ❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

     ❐ I returned the summons unexecuted because _____ ; or

     ❐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00   .

I declare under penalty of perjury that this information is true.


Date: _____

                                _____
                                          *Server's signature*

                                _____
                                         *Printed name and title*

                                _____
                                         *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| BROOKE SAYERS, as parent and general guardian of J.B., a minor, KHANYE SUTTON, DOMINIONA WELLS, and DESTINI WILSON<br><br>_____<br>*Plaintiff(s)*<br>v.<br>CONNEXIN SOFTWARE, INC. & GOLDSBORO PEDIATRICS, P.A.<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   GOLDSBORO PEDIATRICS, P.A.
2706 Medical Office Place
Goldsboro, NC 27534

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                      *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____                   _____
                                                          *Server's signature*

                                              _____
                                                          *Printed name and title*


                                              _____
                                                          *Server's address*

Additional information regarding attempted service, etc:

## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BROOKE SAYERS, as parent and general guardian of J.B., a minor, KHANYE SUTTON, DOMINIONA WELLS, and DESTINI WILSON,

on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

CONNEXIN SOFTWARE, INC., individually,

and

GOLDSBORO PEDIATRICS, P.A., on behalf of itself and all others similarly situated,

      Defendants.

Case No.:

**CLASS ACTION COMPLAINT**

DEMAND FOR JURY TRIAL

Plaintiffs Brook Sayers, as parent and general guardian of J.B., a minor, Khanye Sutton, Dominiona Wells, and Destini Wilson ("Plaintiffs"), individually and on behalf of all others similarly situated ("Plaintiff Class Members"), bring this Class Action Complaint against Connexin Software, Inc. ("Connexin"), individually, and Goldsboro Pediatrics, P.A. ("Goldsboro"), on behalf of itself and all others similarly situated ("Practice Group Class Members"), and allege, upon personal knowledge as to their own actions and their counsels' investigations, and upon information and belief as to all other matters, as follows:

## I. INTRODUCTION

1.    Plaintiffs bring this class action against Defendants for their failure to properly secure and safeguard personal identifiable information ("PII")[1] and protected health information

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or

1

("PHI") of more than 2.2 million current and former pediatric patients, including Plaintiffs and Nationwide Plaintiff Class Members, including, (1) patient demographic information (such as patient name, guarantor name, parent/guardian name, address, email address, and date of birth); (2) Social Security Numbers ("SSNs"), (3) health insurance information (payer name, payer contract dates, policy information including type and deductible amount and subscriber number); (4) medical and/or treatment information (dates of service, location, services requested or procedures performed, diagnosis, prescription information, physician names, and Medical Record Numbers); and (5) billing and/or claims information (invoices, submitted claims and appeals, and patient account identifiers used by your provider).

2.      Connexin is a provider of electronic medical records and practice management software, billing services, and business analytic tools to pediatric physician practice groups, including Practice Group Class Members.

3.      Prior to and through September 13, 2022, Connexin obtained the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members from approximately 119 pediatrics physician practice groups, including Practice Group Class Members, and stored that PII and PHI, unencrypted, in an Internet-accessible environment on Connexin's network.

4.      On or before August 26, 2022, Connexin learned of a data breach on its network that occurred on or around August 26, 2022 (the "Data Breach").

5.      Connexin determined that, during the Data Breach, an unauthorized actor removed data contained in an offline set of patient data used for data conversion and troubleshooting, which may have included Plaintiffs' and Class Members' PII and PHI.

6.      At the time of the Data Breach, more than ten (10) years had passed since some of

---

identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

Plaintiffs and Class Members has obtained services from Practice Group Class Members, yet Connexin still stored their unencrypted PII and PHI on its network.

7.      On or around December 6, 2022, Connexin began notifying various states Attorneys General of the Data Breach.

8.      On or around December 6, 2022, Connexin began notifying Plaintiffs and Nationwide Plaintiff Class Members of the Data Breach.

9.      By obtaining, collecting, using, and deriving a benefit from the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members, Defendants assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.  Defendants admit that the unencrypted PII and PHI that may have been accessed and/or acquired by an unauthorized actor included (1) patient demographic information (such as patient name, guarantor name, parent/guardian name, address, email address, and date of birth); (2) Social Security Numbers ("SSNs"), (3) health insurance information (payer name, payer contract dates, policy information including type and deductible amount and subscriber number); (4) medical and/or treatment information (dates of service, location, services requested or procedures performed, diagnosis, prescription information, physician names, and Medical Record Numbers); and (5) billing and/or claims information (invoices, submitted claims and appeals, and patient account identifiers used by your provider).

10.     The exposed PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members can be sold on the dark web.  Hackers can access and then offer for sale the unencrypted, unredacted PII and PHI to criminals.  Plaintiffs and Nationwide Plaintiff Class Members now face a lifetime risk of (i) identity theft, which is heightened here by the loss of Social Security number, and (ii) the sharing and detrimental use of their sensitive information.

11.     The PII and PHI was compromised due to Defendants' negligent and/or careless acts and omissions and the failure to protect the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members.  In addition to Defendants' failure to prevent the Data Breach, Defendants waited more than three months after the Data Breach occurred to report it to the states Attorneys General and affected individuals.   Defendants have also purposefully maintained secret the specific vulnerabilities and root causes of the breach and has not informed Plaintiffs and Nationwide Plaintiff Class Members of that information.

12.     As a result of this delayed response, Plaintiffs and Nationwide Plaintiff Class Members had no idea their PII and PHI had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm, including the sharing and detrimental use of their sensitive information. The risk will remain for their respective lifetimes.

13.     Plaintiffs brings this action on behalf of all persons whose PII and PHI was compromised as a result of Defendants' failure to: (i) adequately protect the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members; (ii) warn Plaintiffs and Nationwide Plaintiff Class Members of Defendants' inadequate information security practices; and (iii) effectively secure hardware containing protected PII and PHI using reasonable and effective security procedures free of vulnerabilities and incidents. Defendants' conduct amounts to negligence and violates federal and state statutes.

14.     Plaintiffs and Nationwide Plaintiff Class Members have suffered injury as a result of Defendants' conduct. These injuries include: (i) lost or diminished value of PII and PHI; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (iii) lost opportunity costs associated with

4

attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, (iv) the disclosure of their private information, and (v) the continued and certainly increased risk to their PII and PHI, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII and PHI.

15.     Defendants disregarded the rights of Plaintiffs and Nationwide Plaintiff Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As the result, the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members was compromised through disclosure to an unauthorized third party. Plaintiffs and Nationwide Plaintiff Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II. PARTIES

16.     Plaintiff Sayers and her minor child, J.B., are citizens of Virginia residing in Norfolk, Virginia.

17.     Plaintiff Sutton is a citizen of North Carolina residing in La Grange, North Carolina.

18.     Plaintiff Wells is a citizen of North Carolina residing in Dudley, North Carolina.

19.     Plaintiff Wilson is a citizen of Florida residing in Summerfield, Florida.

20.     Connexin is a Maryland corporation with a principal place of business in Fort

Washington, Pennsylvania.

21.     Goldsboro is a North Carolina corporation with a principal place of business in Goldsboro, North Carolina.

22.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiffs.  Plaintiffs will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

23.     All of Plaintiffs' claims stated herein are asserted against Defendants and any of their owners, predecessors, successors, subsidiaries, agents and/or assigns.

### III. JURISDICTION AND VENUE

24.     This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member, including Plaintiff, is a citizen of a state different from Defendants to establish minimal diversity.

25.     Connexin is a citizen of Maryland and Pennsylvania because it is a corporation formed under Maryland law and its principal place of business is in Fort Washington, Pennsylvania.

26.     Goldsboro is a citizen of North Carolina because it is a corporation formed under North Carolina law and its principal place of business is in Goldsboro, North Carolina.

27.     The Eastern District of Pennsylvania has personal jurisdiction over Defendants because Connexin conducts substantial business in Pennsylvania and this District and Goldsboro

and other Practice Group Class Members entrusted Plaintiffs' and Class Members' PII and PHI to Connexin in this District.

28.    Venue is proper in this District under 28 U.S.C. §1391(b) because Connexin operates in this District, Goldsboro and other Practice Group Class Members entrusted Plaintiffs' and Class Members' PII and PHI to Connexin in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## IV. FACTUAL ALLEGATIONS

### *Background*

29.    Connexin collected the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members from pediatric physician practice groups, including Practice Group Class Members.

30.    Plaintiffs and Nationwide Plaintiff Class Members relied on these sophisticated Defendants to keep their PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.  Plaintiffs and Nationwide Plaintiff Class Members demand security to safeguard their PII and PHI.

31.    Defendants had a duty to adopt reasonable measures to protect the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members from involuntary disclosure to third parties.

### *The Data Breach*

32.    On or about December 6, 2022, Connexin sent Plaintiffs and Nationwide Plaintiff Class Members a *Notice of Data Breach* and posted a substantially similar notice on its website (the "Website Notice").  Connexin informed Plaintiffs and other Class Members that:

> Connexin Software, Inc. (Connexin), a provider of electronic medical records and practice management software, billing services, and business analytic tools to pediatric physician practice groups, is providing notice that an unauthorized third party was able to gain access to an internal computer network.  The live electronic medical record was not accessed and the incident did not affect any pediatric

practice groups' systems, databases, or medical records system at all.

On August 26, 2022, Connexin detected a data anomaly on our internal network.  We immediately launched an investigation and engaged third-party forensic experts to determine the nature and scope of the incident.  On September 13, 2022, we learned that an unauthorized party was able to access an offline set of patient data used for data conversion and troubleshooting.  Some of that data was removed by the unauthorized party.  The live electronic record system was not accessed in this incident, and the incident did not involve any physician practice group's systems, databases, or medical records system at all.  Connexin is not aware of any actual or attempted misuse of personal information as a result of this event.

The patient information may have included: (1) patient demographic information (such as patient name, guarantor name, parent/guardian name, address, email address, and date of birth); (2) Social Security Numbers ("SSNs"), (3) health insurance information (payer name, payer contract dates, policy information including type and deductible amount and subscriber number); (4) medical and/or treatment information (dates of service, location, services requested or procedures performed, diagnosis, prescription information, physician names, and Medical Record Numbers); and (5) billing and/or claims information (invoices, submitted claims and appeals, and patient account identifiers used by your provider). Please note that not all data fields may have been involved for all individuals. Information of a parent, guardian, or guarantor may also have been impacted by the incident.[2]

33.     Connexin admitted in the *Notice of Data Breach* that an unauthorized actor accessed sensitive information about Plaintiffs and Nationwide Plaintiff Class Members, including (1) patient demographic information (such as patient name, guarantor name, parent/guardian name, address, email address, and date of birth); (2) Social Security Numbers ("SSNs"), (3) health insurance information (payer name, payer contract dates, policy information including type and deductible amount and subscriber number); (4) medical and/or treatment information (dates of service, location, services requested or procedures performed, diagnosis, prescription information,

---

[2] Exhibit 1 (Website Notice), *available at* https://www.officepracticum.com/substitute-notice/ (last visited Dec. 21, 2022).

physician names, and Medical Record Numbers); and (5) billing and/or claims information (invoices, submitted claims and appeals, and patient account identifiers used by your provider).

34.     In response to the Data Breach, Connexin claims that "[a]s soon as we discovered the incident, we immediately took action to stop the unauthorized activity.  This included a password reset of all corporate accounts and moving all patient data used for data conversion and troubleshooting into an environment with even greater security. Connexin also retained a third-party cybersecurity forensic firm to investigate the issue and is working with law enforcement to investigate the incident.  In response to this incident, Connexin has enhanced its security and monitoring as well as further hardened its systems as appropriate to minimize the risk of any similar incident in the future."[3] However, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure a breach does not occur again have not been shared with regulators or Plaintiffs and Nationwide Plaintiff Class Members, who retain a vested interest in ensuring that their information remains protected.

35.     The unencrypted PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII and PHI for targeted marketing without the approval of Plaintiffs and Nationwide Plaintiff Class Members.  Unauthorized individuals can easily access the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members.

36.     Defendants did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information they were maintaining for Plaintiffs and Nationwide Plaintiff Class Members, causing the exposure of PII and PHI for Plaintiffs and Nationwide Plaintiff Class Members.

---

[3] *Id.*

37.     Because Defendants had a duty to protect Plaintiffs' and Class Members' PII and PHI, Defendants should have accessed readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information.

38.     In the years immediately preceding the Data Breach, Defendants knew or should have known that Defendants' computer systems were a target for cybersecurity attacks because warnings were readily available and accessible via the internet.

39.     In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[4]

40.     In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "*[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies*.  They breach networks, use specialized tools to maximize damage, *leak corporate information on dark web portals*, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[5]

41.     In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "*[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to*

---

[4] FBI, High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations (Oct. 2, 2019) (emphasis added), *available at* https://www.ic3.gov/Media/Y2019/PSA191002 (last visited Jan. 25, 2022).

[5] ZDNet, Ransomware mentioned in 1,000+ SEC filings over the past year (Apr. 30, 2020) (emphasis added), *available at* https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last visited Jan. 25, 2022).

*release stolen data* if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[6]

42.     This readily available and accessible information confirms that, prior to the Data Breach, Defendants knew or should have known that (i) cybercriminals were targeting big companies such as Defendants, (ii) cybercriminals were ferociously aggressive in their pursuit of big companies such as Defendants, (iii) cybercriminals were leaking corporate information on dark web portals, and (iv) cybercriminals' tactics included threatening to release stolen data.

43.     In light of the information readily available and accessible on the internet before the Data Breach, Defendants, having elected to store the unencrypted PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members in an Internet-accessible environment, had reason to be on guard for the exfiltration of the PII and PHI and Defendants' type of business had cause to be particularly on guard against such an attack.

44.     Prior to the Data Breach, Defendants knew or should have known that there was a foreseeable risk that Plaintiffs' and Class Members' PII and PHI could be accessed, exfiltrated, and published as the result of a cyberattack.

45.     Prior to the Data Breach, Defendants knew or should have known that they should have encrypted the Social Security numbers and other sensitive data elements within the PII and PHI to protect against their publication and misuse in the event of a cyberattack.

***Defendants Acquires, Collects, and Stores the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members.***

46.     Practice Group Class members acquired the PII and PHI of Plaintiffs and

---

[6]     U.S.   CISA,   Ransomware   Guide  –  September   2020,   *available   at* https://www.cisa.gov/sites/default/files/publications/CISA_MS ISAC_Ransomware%20Guide_S508C_.pdf (last visited Jan. 25, 2022).

Nationwide Plaintiff Class Members in the course of providing pediatric medical treatment.

47.     Connexin obtained the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members from Practice Group Class Members and stored it on its network.

48.     By obtaining, sharing, and storing the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting the PII and PHI from disclosure.

49.     Plaintiffs and Nationwide Plaintiff Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI and relied on Defendants to keep their PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

50.     As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[7]

51.     To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendants could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program.  Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

---

[7]  *See* How to Protect Your Networks from RANSOMWARE, at 3, *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited Aug. 23, 2021).

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[8]

52.    To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendants could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**.  Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

---

[8] *Id.* at 3-4.

- **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[9]

53.     To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendants could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

-       Apply latest security updates
-       Use threat and vulnerability management
-       Perform regular audit; remove privileged credentials;

---

[9] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at* https://us-cert.cisa.gov/ncas/tips/ST19-001 (last visited Aug. 23, 2021).

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[10]

54.     Given that Connexin was storing the PII and PHI and PHI of more than 2.2 million individuals, Defendants could and should have implemented all of the above measures to prevent and detect ransomware attacks.

55.     The occurrence of the Data Breach indicates that Defendants failed to adequately implement one or more of the above measures to prevent ransomware attacks, resulting in the Data

---

[10] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited Aug. 23, 2021).

Breach and the exposure of the PII and PHI and PHI of more than 2.2 million individuals, including Plaintiffs and Nationwide Plaintiff Class Members.

### *Securing PII and PHI and Preventing Breaches*

56.     Defendants could have prevented this Data Breach by properly securing and encrypting the folders, files, and or data fields containing the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members.  Alternatively, Defendants could have destroyed the data they no longer had a reasonable need to maintain or only stored data in an Internet-accessible environment when there was a reasonable need to do so.

57.     Defendants' negligence in safeguarding the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

58.     Despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members from being compromised.

59.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[11] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[12]

---

[11] 17 C.F.R. § 248.201 (2013).

[12] *Id.*

60.     The ramifications of Defendants' failure to keep secure the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members are long lasting and severe. Once PII and PHI is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

### *Value of Personal Identifiable Information*

61.     The PII and PHI of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[13] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[14] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[15]

62.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts.  The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

63.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information,

---

[13] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*:  https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Jan. 26, 2022).

[14] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*:  https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/  (last accessed Jan. 26, 2022).

[15] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed Dec. 29, 2020).

personally identifiable information and Social Security numbers are worth more than 10x on the black market."[16]

64.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

65.     The fraudulent activity resulting from the Data Breach may not come to light for years.

66.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII and PHI is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[17]

67.     At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members, including Social Security numbers, and of the foreseeable consequences that would occur if Defendants' data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Nationwide Plaintiff Class Members as a result of a breach.

68.     Plaintiffs and Nationwide Plaintiff Class Members now face years of constant

---

[16] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Jan. 26, 2022).

[17] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last accessed Mar. 15, 2021).

surveillance of their financial and personal records, monitoring, and loss of rights. The Nationwide Plaintiff Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

69.     Defendants were, or should have been, fully aware of the unique type and the significant volume of data contained on Connexin's network, amounting to potentially millions of individuals' detailed, personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

70.     To date, Defendants have offered Plaintiffs and Nationwide Plaintiff Class Members whose Social Security numbers were impacted only one year of identity monitoring services through Kroll. The offered service is inadequate to protect Plaintiffs and Nationwide Plaintiff Class Members from the threats they face for years to come, particularly in light of the PII and PHI at issue here.

71.     The injuries to Plaintiffs and Nationwide Plaintiff Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members.

### *Plaintiff Sayers' Experience*

72.     Prior to the Data Breach, Plaintiff Sayers' minor child, J.B., received pediatric services from Renaissance Pediatrics, P.C. in Chesapeake, Virginia.

73.     Plaintiff Sayers, on behalf of J.B., received Connexin's *Notice of Data Breach*, dated December 6, 2022, on or about that date.  The notice stated that J.B.'s personal information, including Social Security number, may have been removed from Connexin's network by an unauthorized actor and that J.B. may have received services from Renaissance Pediatrics, P.C.

74.     As a result of the Data Breach, J.B.'s sensitive information may have been removed

19

from Connexin's network by an unauthorized actor.  The confidentiality of J.B.'s sensitive information has been irreparably harmed.  For the rest of J.B.'s life, J.B. will have to worry about when and how J.B.'s sensitive information may be shared or used to their detriment.

75.     As a result of the Data Breach notice, Plaintiff Sayers spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Data Breach*. This time has been lost forever and cannot be recaptured.

76.     Additionally, Plaintiff Sayers is very careful about sharing J.B.'s sensitive PII and PHI. She has never knowingly transmitted unencrypted J.B.'s sensitive PII and PHI over the internet or any other unsecured source.

77.     Plaintiff Sayers stores any documents containing J.B.'s sensitive PII and PHI in a safe and secure location or destroys the documents. Moreover, she diligently chooses unique usernames and passwords for various online accounts that contain J.B.'s sensitive information.

78.     Plaintiff Sayers suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of J.B.'s privacy.

79.     J.B. has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from J.B.'s PII and PHI, especially J.B.'s Social Security number, being placed in the hands of unauthorized third parties and possibly criminals.

80.     J.B. has a continuing interest in ensuring that J.B.'s PII and PHI, which, upon information and belief, remains backed up in Connexin's possession, is protected and safeguarded from future breaches.

***Plaintiff Sutton's Experience***

81.     Prior to the Data Breach, Plaintiff Sutton received pediatric services from

20

Goldsboro.

82.     Plaintiff Sutton received Connexin's *Notice of Data Breach*, dated December 6, 2022, on or about that date.  The notice stated that Plaintiff Sutton's personal information, including Social Security number, may have been removed from Connexin's network by an unauthorized actor and that Plaintiff Sutton may have received services from Goldsboro.

83.     As a result of the Data Breach, Plaintiff Sutton's sensitive information may have been removed from Connexin's network by an unauthorized actor.  The confidentiality of Plaintiff Sutton's sensitive information has been irreparably harmed.  For the rest of Plaintiff Sutton's life, he will have to worry about when and how his sensitive information may be shared or used to his detriment.

84.     As a result of the Data Breach notice, Plaintiff Sutton spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Data Breach* and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

85.     Additionally, Plaintiff Sutton is very careful about sharing his sensitive PII and PHI. He has never knowingly transmitted unencrypted sensitive PII and PHI over the internet or any other unsecured source.

86.     Plaintiff Sutton stores any documents containing his sensitive PII and PHI in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts that contain sensitive information.

87.     Plaintiff Sutton suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

88.     Plaintiff Sutton has suffered imminent and impending injury arising from the

21

substantially increased risk of fraud, identity theft, and misuse resulting from his PII and PHI, especially his Social Security number, being placed in the hands of unauthorized third parties and possibly criminals.

89.    Plaintiff Sutton has a continuing interest in ensuring that his PII and PHI, which, upon information and belief, remains backed up in Connexin's possession, is protected and safeguarded from future breaches.

***Plaintiff Wells' Experience***

90.    Prior to the Data Breach, Plaintiff Wells received pediatric services from Goldsboro.

91.    Plaintiff Wells received Connexin's *Notice of Data Breach*, dated December 6, 2022, on or about that date.  The notice stated that Plaintiff Wells' personal information, including Social Security number, may have been removed from Connexin's network by an unauthorized actor and that Plaintiff Wells may have received services from Goldsboro.

92.    As a result of the Data Breach, Plaintiff Wells' sensitive information may have been removed from Connexin's network by an unauthorized actor.  The confidentiality of Plaintiff Wells' sensitive information has been irreparably harmed.  For the rest of Plaintiff Wells' life, she will have to worry about when and how her sensitive information may be shared or used to their detriment.

93.    As a result of the Data Breach notice, Plaintiff Wells spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Data Breach* and self-monitoring her accounts. This time has been lost forever and cannot be recaptured.

94.    Additionally, Plaintiff Wells is very careful about sharing her sensitive PII and PHI.

22

She has never knowingly transmitted unencrypted sensitive PII and PHI over the internet or any other unsecured source.

95.     Plaintiff Wells stores any documents containing her sensitive PII and PHI in a safe and secure location or destroys the documents. Moreover, she diligently chooses unique usernames and passwords for her various online accounts that contain sensitive information.

96.     Plaintiff Wells suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

97.     Plaintiff Wells has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII and PHI, especially her Social Security number, being placed in the hands of unauthorized third parties and possibly criminals.

98.     Plaintiff Wells has a continuing interest in ensuring that her PII and PHI, which, upon information and belief, remains backed up in Connexin's possession, is protected and safeguarded from future breaches.

### Plaintiff Wilson's Experience

99.     More than ten (10) years prior to the Data Breach, Plaintiff Wilson received pediatric services from Children's Health of Ocala in Ocala, Florida.

100.    Plaintiff Wilson received Connexin's *Notice of Data Breach*, dated December 6, 2022, on or about that date.  The notice stated that Plaintiff Wilson's personal information, including Social Security number, may have been removed from Connexin's network by an unauthorized actor and that Plaintiff Wilson may have received services from Children's Health of Ocala.

101.    As a result of the Data Breach, Plaintiff Wilson's sensitive information may have

been removed from Connexin's network by an unauthorized actor. The confidentiality of Plaintiff Wilson's sensitive information has been irreparably harmed. For the rest of Plaintiff Wilson's life, she will have to worry about when and how her sensitive information may be shared or used to their detriment.

102.    As a result of the Data Breach notice, Plaintiff Wilson spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Data Breach* and self-monitoring her accounts. This time has been lost forever and cannot be recaptured.

103.    Additionally, Plaintiff Wilson is very careful about sharing her sensitive PII and PHI. She has never knowingly transmitted unencrypted sensitive PII and PHI over the internet or any other unsecured source.

104.    Plaintiff Wilson stores any documents containing her sensitive PII and PHI in a safe and secure location or destroys the documents. Moreover, she diligently chooses unique usernames and passwords for her various online accounts that contain sensitive information.

105.    Plaintiff Wilson suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

106.    Plaintiff Wilson has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII and PHI, especially her Social Security number, being placed in the hands of unauthorized third parties and possibly criminals.

107.    Plaintiff Wilson has a continuing interest in ensuring that her PII and PHI, which, upon information and belief, remains backed up in Connexin's possession, is protected and safeguarded from future breaches.

## V. PLAINTIFF CLASS ALLEGATIONS

108.   Plaintiffs bring this nationwide class action on behalf of themselves and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

109.   The Nationwide Plaintiff Class that Plaintiffs seeks to represent is defined as follows:

> All individuals whose PII and PHI was compromised in the data breach that is the subject of the *Notice of Data Breach* that Defendants sent to Plaintiffs and Nationwide Plaintiff Class Members on or around December 6, 2022 (the "Nationwide Plaintiff Class").

110.   Excluded from the Nationwide Plaintiff Class are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

111.   Plaintiffs reserve the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

112.   <u>Numerosity</u>, Fed. R. Civ. P. 23(a)(1): The Nationwide Plaintiff Class are so numerous that joinder of all members is impracticable. Connexin identified numerous individuals whose PII and PHI was compromised in the Data Breach, and the Nationwide Plaintiff Class is apparently identifiable within Defendants' records.   Connexin reported to the United States Department of Health and Human Services that the Data Breach impacted 2,261,365 individuals.

25

113.   <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Nationwide Plaintiff Class exist and predominate over any questions affecting only individual Nationwide Plaintiff Class Members. These include:

    a.   Whether and to what extent Defendants had a duty to protect the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members;

    b.   Whether Defendants had duties not to disclose the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members to unauthorized third parties;

    c.   Whether Defendants had duties not to use the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members for non-business purposes;

    d.   Whether Defendants failed to adequately safeguard the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members;

    e.   When Defendants actually learned of the Data Breach;

    f.   Whether Defendants adequately, promptly, and accurately informed Plaintiffs and Nationwide Plaintiff Class Members that their PII and PHI had been compromised;

    g.   Whether Defendants violated the law by failing to promptly notify Plaintiffs and Nationwide Plaintiff Class Members that their PII and PHI had been compromised;

    h.   Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    i.   Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

    j.   Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members;

k. Whether Plaintiffs and Nationwide Plaintiff Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendants' wrongful conduct;

l. Whether Plaintiffs and Nationwide Plaintiff Class Members are entitled to restitution as a result of Defendants' wrongful conduct; and

m. Whether Plaintiffs and Nationwide Plaintiff Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

114. <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of those of other Nationwide Plaintiff Class Members because all had their PII and PHI compromised as a result of the Data Breach, due to Defendants' misfeasance.

115. <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Nationwide Plaintiff Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Nationwide Plaintiff Class Members and making final injunctive relief appropriate with respect to the Nationwide Plaintiff Class as a whole. Defendants' policies challenged herein apply to and affect Nationwide Plaintiff Class Members uniformly and Plaintiffs' challenge of these policies hinges on Defendants' conduct with respect to the Nationwide Plaintiff Class as a whole, not on facts or law applicable only to Plaintiffs.

116. <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately represent and protect the interests of the Nationwide Plaintiff Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Nationwide Plaintiff Class. Plaintiffs seek no relief that is antagonistic or adverse to the Members of the Nationwide Plaintiff Class and the infringement of the rights and the damages they have suffered

are typical of other Nationwide Plaintiff Class Members. Plaintiffs have retained counsel experienced in complex class action litigation, and Plaintiffs intends to prosecute this action vigorously.

117.    Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Nationwide Plaintiff Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Nationwide Plaintiff Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for those Nationwide Plaintiff Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

118.    The nature of this action and the nature of laws available to Plaintiffs and Nationwide Plaintiff Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Nationwide Plaintiff Class Members for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Nationwide Plaintiff Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs was exposed is representative of that experienced by the Nationwide Plaintiff Class and will establish the right of each Nationwide Plaintiff Class

Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

119.    The litigation of the claims brought herein is manageable.  Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Nationwide Plaintiff Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

120.    Adequate notice can be given to Nationwide Plaintiff Class Members directly using information maintained in Defendants' records.

121.    Unless a Class-wide injunction is issued, Defendants may continue in their failure to properly secure the PII and PHI of Nationwide Plaintiff Class Members, Defendants may continue to refuse to provide proper notification to Nationwide Plaintiff Class Members regarding the Data Breach, and Defendants may continue to act unlawfully as set forth in this Complaint.

122.    Further, Defendants have acted or refused to act on grounds generally applicable to the Nationwide Plaintiff Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Nationwide Plaintiff Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

123.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

        a.  Whether Defendants owed a legal duty to Plaintiffs and Nationwide Plaintiff Class Members to exercise due care in collecting, storing, using, and safeguarding their PII and PHI;

b. Whether Defendants breached a legal duty to Plaintiffs and Nationwide Plaintiff Class Members to exercise due care in collecting, storing, using, and safeguarding their PII and PHI;

c. Whether Defendants failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d. Whether an implied contract existed between Defendants on the one hand, and Plaintiffs and Nationwide Plaintiff Class Members on the other, and the terms of that implied contract;

e. Whether Defendants breached the implied contract;

f. Whether Defendants adequately and accurately informed Plaintiffs and Nationwide Plaintiff Class Members that their PII and PHI had been compromised;

g. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h. Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members; and,

i. Whether Nationwide Plaintiff Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendants' wrongful conduct.

## VI. DEFENDANT PRACTICE GROUP CLASS ALLEGATIONS

124.    Plaintiffs bring this nationwide class action on behalf of themselves and on behalf

30

of all others similarly situated against Goldsboro and all others similarly situated pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

125.    The Practice Group Class that Plaintiffs seek to certify is defined as follows:

> All pediatric physician practice groups from which Connexin obtained the PII and PHI that was compromised in the data breach that is the subject of the *Notice of Data Breach* that Connexin sent to Plaintiffs and Nationwide Plaintiff Class Members on or around December 6, 2022 (the "Practice Group Class").

126.    Excluded from the Practice Group Class are the following individuals and/or entities: Plaintiffs and Class Members; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

127.    Plaintiffs reserve the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

128.    <u>Numerosity</u>, Fed. R. Civ. P. 23(a)(1): The Practice Group Class are so numerous that joinder of all members is impracticable. Connexin has identified 119 pediatric physician practice groups from which Connexin obtained the PII and PHI that was compromised in the Data Breach, and the Practice Group Class is apparently identifiable within Defendants' records.

129.    <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Practice Group Class exist and predominate over any questions affecting only individual Class Members. These include:

   a.    Whether Practice Group Class Members owe a legal duty to secure the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members;

b.  Whether Practice Group Class Members continue to breach this legal duty by failing to employ reasonable measures to secure PII and PHI, including by failing to ensure that sensitive PII and PHI is encrypted and that PII and PHI is deleted if there is no reasonable need to maintain it; and

c.  Whether Practice Group Class Members' ongoing breaches of their legal duty continue to cause Plaintiffs harm.

130.   <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims against Goldsboro are typical of those of other Practice Group Class Members because all failed to ensure that Connexin adequately safeguarded the PII and PHI compromised as a result of the Data Breach, including by failing to ensure that Connexin encrypted sensitive PII and PHI and failing to ensure that Connexin deleted PII and PHI it no longer had a reasonable need to maintain.

131.   <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Goldsboro has acted or refused to act on grounds generally applicable to the Practice Group Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Nationwide Plaintiff Class Members and making final injunctive relief appropriate with respect to the Practice Group Class as a whole.  Practice Group Class Members' policies challenged herein apply to and affect Nationwide Plaintiff Class Members uniformly and Plaintiffs' challenge of these policies hinges on Practice Group Class Members' conduct with respect to the Practice Group Class as a whole, not on facts or law applicable only to Goldsboro.

132.   <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Goldsboro will fairly and adequately represent and protect the interests of the Practice Group Class Members in that it has no disabling conflicts of interest that would be antagonistic to those of the other Practice Group Class Members.

133.     The nature of this action and the nature of laws available to Plaintiffs and Nationwide Plaintiff Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Nationwide Plaintiff Class Members for the wrongs alleged because Practice Group Class Members would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Nationwide Plaintiff Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Nationwide Plaintiff Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

134.     The litigation of the claims brought herein is manageable.  Practice Group Class Members' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Practice Group Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

135.     Adequate notice can be given to Practice Group Class Members directly using information maintained in Defendants' records.

136.     Unless a Class-wide injunction is issued, Practice Group Class Members may continue in their failure to properly secure the PII and PHI of Class Members and Practice Group Class Members may continue to act unlawfully as set forth in this Complaint.

137.     Further, Goldsboro has acted or refused to act on grounds generally applicable to Practice Group Class Members and, accordingly, final injunctive or corresponding declaratory relief with regard to the Practice Group Class Members as a whole is appropriate under Rule

23(b)(2) of the Federal Rules of Civil Procedure.

<u>COUNT I</u>
NEGLIGENCE
**(On Behalf of Plaintiffs and the Nationwide Plaintiff Class and Against Connexin)**

138.    Plaintiffs and the Nationwide Plaintiff Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 88.

139.    Connexin has full knowledge of the sensitivity of the PII and PHI and the types of harm that Plaintiffs and the Nationwide Plaintiff Class could and would suffer if the PII and PHI were wrongfully disclosed.

140.    Connexin knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII and PHI of Plaintiffs and the Nationwide Plaintiff Class involved an unreasonable risk of harm to Plaintiffs and the Nationwide Plaintiff Class, even if the harm occurred through the criminal acts of a third party.

141.    Connexin had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Connexin's security protocols to ensure that the PII and PHI of Plaintiffs and the Nationwide Plaintiff Class in Connexin's possession was adequately secured and protected.

142.    Connexin also had a duty to exercise appropriate clearinghouse practices to remove from an Internet-accessible environment the PII and PHI it was no longer required to retain pursuant to regulations and had no reasonable need to maintain in an Internet-accessible environment.

143.    Connexin also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PII and PHI of Plaintiffs and the Nationwide Plaintiff Class.

34

144.    Connexin's duty to use reasonable security measures arose as a result of the special relationship that existed between Connexin and Plaintiffs and the Nationwide Plaintiff Class.  That special relationship arose because Connexin acquired Plaintiffs' and the Nationwide Plaintiff Class's confidential PII and PHI in the course of proving software services to pediatric physician practice groups from which Plaintiffs and Nationwide Plaintiff Class Members obtained medical treatment.

145.    Connexin was subject to an "independent duty," untethered to any contract between Connexin and Plaintiffs or the Nationwide Plaintiff Class.

146.    A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Nationwide Plaintiff Class was reasonably foreseeable, particularly in light of Connexin's inadequate security practices.

147.    Plaintiffs and the Nationwide Plaintiff Class were the foreseeable and probable victims of any inadequate security practices and procedures.  Connexin knew or should have known of the inherent risks in collecting and storing the PII and PHI of Plaintiffs and the Nationwide Plaintiff Class, the critical importance of providing adequate security of that PII and PHI, and the necessity for encrypting PII and PHI stored on Connexin's systems.

148.    Connexin's own conduct created a foreseeable risk of harm to Plaintiffs and the Nationwide Plaintiff Class. Connexin's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein.  Connexin's misconduct also included its decisions not to comply with industry standards for the safekeeping of the PII and PHI of Plaintiffs and the Nationwide Plaintiff Class, including basic encryption techniques freely available to Connexin.

149.    Plaintiffs and the Nationwide Plaintiff Class had no ability to protect their PII and

PHI that was in, and possibly remains in, Connexin's possession.

150.     Connexin was in a position to protect against the harm suffered by Plaintiffs and the Nationwide Plaintiff Class as a result of the Data Breach.

151.     Connexin had and continues to have a duty to adequately disclose that the PII and PHI of Plaintiffs and the Nationwide Plaintiff Class within Connexin's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and the Nationwide Plaintiff Class to (i) take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII and PHI by third parties and (ii) prepare for the sharing and detrimental use of their sensitive information.

152.     Connexin had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII and PHI of Plaintiffs and the Nationwide Plaintiff Class.

153.     Connexin has admitted that the PII and PHI of Plaintiffs and the Nationwide Plaintiff Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

154.     Connexin, through its actions and/or omissions, unlawfully breached its duties to Plaintiffs and the Nationwide Plaintiff Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII and PHI of Plaintiffs and the Nationwide Plaintiff Class during the time the PII and PHI was within Connexin's possession or control.

155.     Connexin improperly and inadequately safeguarded the PII and PHI of Plaintiffs and the Nationwide Plaintiff Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

156.    Connexin failed to heed industry warnings and alerts to provide adequate safeguards to protect the PII and PHI of Plaintiffs and the Nationwide Plaintiff Class in the face of increased risk of theft.

157.    Connexin, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and the Nationwide Plaintiff Class by failing to have appropriate procedures in place to detect and prevent dissemination of the PII and PHI.

158.    Connexin breached its duty to exercise appropriate clearinghouse practices by failing to remove from the Internet-accessible environment any PII and PHI it was no longer required to retain pursuant to regulations and which Connexin had no reasonable need to maintain in an Internet-accessible environment.

159.    Connexin, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiffs and the Nationwide Plaintiff Class the existence and scope of the Data Breach.

160.    But for Connexin's wrongful and negligent breach of duties owed to Plaintiffs and the Nationwide Plaintiff Class, the PII and PHI of Plaintiffs and the Nationwide Plaintiff Class would not have been compromised.

161.    There is a close causal connection between Connexin's failure to implement security measures to protect the PII and PHI of Plaintiffs and the Nationwide Plaintiff Class and the harm, or risk of imminent harm, suffered by Plaintiffs and the Nationwide Plaintiff Class.  The PII and PHI of Plaintiffs and the Nationwide Plaintiff Class was lost and accessed as the proximate result of Connexin's failure to exercise reasonable care in safeguarding such PII and PHI by adopting, implementing, and maintaining appropriate security measures.

162.    As a direct and proximate result of Connexin's negligence, Plaintiffs and the

Nationwide Plaintiff Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how its PII and PHI is used; (iii) the compromise, publication, and/or theft of its PII and PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of its PII and PHI; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to its PII and PHI, which remain in Connexin's possession and is subject to further unauthorized disclosures so long as Connexin fails to undertake appropriate and adequate measures to protect the PII and PHI of Plaintiffs and the Nationwide Plaintiff Class; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Nationwide Plaintiff Class.

163. As a direct and proximate result of Connexin's negligence, Plaintiffs and the Nationwide Plaintiff Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

164. Additionally, as a direct and proximate result of Connexin's negligence, Plaintiffs and the Nationwide Plaintiff Class have suffered and will suffer the continued risks of exposure of their PII and PHI, which remain in Connexin's possession and is subject to further unauthorized disclosures so long as Connexin fail to undertake appropriate and adequate measures to protect the PII and PHI in its continued possession.

165.    As a direct and proximate result of Connexin's negligence, Plaintiffs and the Nationwide Plaintiff Class are entitled to recover actual, consequential, and nominal damages.

**COUNT II**
**Declaratory Judgment**
**(On Behalf of Plaintiffs and the Nationwide Plaintiff Class**
**and Against Defendants and the Practice Group Class)**

166.    Plaintiffs re-alleges and incorporate by reference herein all of the allegations contained in paragraphs 1 through 88.

167.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Further, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

168.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiffs' and Class Members' PII and PHI and whether Connexin is currently maintaining data security measures adequate to protect Plaintiffs and Nationwide Plaintiff Class Members from further data breaches that compromise their PII and PHI.  Plaintiffs allege that Defendants' and Practice Group Class Members' data security measures remain inadequate. Defendants and Practice Group Class Members publicly deny these allegations. Furthermore, Plaintiffs continue to suffer injury as a result of the compromise of their PII and PHI and remains at imminent risk that further compromises of their PII and PHI will occur in the future. It is unknown what specific measures and changes Defendants have undertaken in response to the Data Breach.

169.    Plaintiffs and Nationwide Plaintiff Class Members have an ongoing, actionable dispute arising out of Defendants' inadequate security measures, including (i) Defendants' and Practice Group Class Members' failure to encrypt Plaintiffs' and Class Members' PII and PHI, including Social Security numbers, while storing it in an Internet-accessible environment and (ii)

39

Defendants' and Practice Group Class Members' failure to delete PII and PHI they had no reasonable need to maintain in an Internet-accessible environment, including the Social Security numbers of Plaintiffs.

170.   Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.   Defendants and Practice Group Class Members owe a legal duty to secure the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members;

    b.   Defendants and Practice Group Class Members continue to breach this legal duty by failing to employ reasonable measures to secure consumers' PII and PHI; and

    c.   Defendants' and Practice Group Class Members' ongoing breaches of their legal duty continue to cause Plaintiffs harm.

171.   This Court also should issue corresponding prospective injunctive relief requiring Defendants and Practice Group Class Members to employ adequate security protocols consistent with law and industry and government regulatory standards to protect consumers' PII and PHI. Specifically, this injunction should, among other things, direct Defendants and Practice Group Class Members to:

    a.   engage third party auditors, consistent with industry standards, to test Connexin's systems for weakness and upgrade any such weakness found;

    b.   audit, test, and train Connexin's data security personnel regarding any new or modified procedures and how to respond to a data breach;

    c.   regularly test Connexin's systems for security vulnerabilities, consistent with industry standards;

    d.   implement an education and training program for appropriate employees regarding cybersecurity; and

    e.   ensure that Connexin encrypts sensitive PII and PHI and deletes PII and PHI it no longer has a reasonable need to maintain.

172.    If an injunction is not issued, Plaintiffs will suffer irreparable injury, and lack adequate legal remedy, in the event of another data breach at Connexin. The risk of another such breach is real, immediate, and substantial. If another breach at Connexin occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

173.    The hardship to Plaintiffs if an injunction is not issued exceeds the hardship to Defendants and Practice Group Class Members if an injunction is issued. Plaintiffs will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendants and Practice Group Class Members of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendants and Practice Group Class Members have a pre-existing legal obligation to employ such measures.

174.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Connexin, thus eliminating the additional injuries that would result to Plaintiffs and others whose confidential information would be further compromised.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and Nationwide Plaintiff Class Members, request judgment against Defendants and the Practice Group Class and that the Court grant the following:

A.      For an Order certifying the Nationwide Plaintiff Class the Practice Group Class appointing Plaintiffs and their Counsel to represent the Nationwide Plaintiff Class, and appointing Goldsboro and its counsel to represent the Practice Group Class.

B.      For equitable relief enjoining Defendants and Practice Group Class Members from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiffs and Nationwide Plaintiff Class Members;

C.      For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Nationwide Plaintiff Class Members, including but not limited to an order:

   i.    prohibiting Defendants and Practice Group Class Members from engaging in the wrongful and unlawful acts described herein;

   ii.   requiring Defendants and Practice Group Class Members to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

   iii.  requiring Defendants and Practice Group Class Members to delete, destroy, and purge the personal identifying information of Plaintiffs and Nationwide Plaintiff Class Members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Nationwide Plaintiff Class Members;

   iv.   requiring Connexin to implement and maintain a comprehensive Information

Security Program designed to protect the confidentiality and integrity of the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members;

v.   prohibiting Connexin from maintaining the PII and PHI of Plaintiffs and Nationwide Plaintiff Class Members on a cloud-based database unless sensitive PII and PHI is encrypted;

vi.   requiring Connexin to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Connexin's systems on a periodic basis, and ordering Connexin to promptly correct any problems or issues detected by such third-party security auditors;

vii.   requiring Connexin to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.   requiring Connexin to audit, test, and train its security personnel regarding any new or modified procedures;

ix.   requiring Connexin to segment data by, among other things, creating firewalls and access controls so that if one area of Connexin's network is compromised, hackers cannot gain access to other portions of Connexin's systems;

x.   requiring Connexin to conduct regular database scanning and securing checks;

xi.   requiring Connexin to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and

Nationwide Plaintiff Class Members;

xii.   requiring Connexin to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.   requiring Connexin to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Connexin's policies, programs, and systems for protecting personal identifying information;

xiv.   requiring Connexin to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Connexin's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.   requiring Connexin to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.   requiring Connexin to implement logging and monitoring programs sufficient to track traffic to and from Connexin's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Connexin's compliance with

the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.    For an award of damages, including actual, consequential, statutory, and nominal damages, as allowed by law in an amount to be determined;

E.    For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.    For prejudgment interest on all amounts awarded; and

G.    Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand that this matter be tried before a jury.

Respectfully Submitted,

MORGAN & MORGAN PHILADELPHIA, PLLC

BY:    */s/ Kevin Clancy Boylan, Esquire*
       K. CLANCY BOYLAN, ESQ. ID# 314117
       2005 Market Street, Suite 350
       Philadelphia, PA 19103
       (215) 446-9795
       (215) 446-9799 (FAX)
       cboylan@forthepeople.com

       John A. Yanchunis*
       Ryan D. Maxey*
       **MORGAN & MORGAN COMPLEX
       BUSINESS DIVISION**
       201 N. Franklin Street, 7th Floor
       Tampa, Florida 33602
       (813) 223-5505
       jyanchunis@ForThePeople.com
       rmaxey@ForThePeople.com

       *Attorneys for Plaintiffs and the Proposed
       Class *pro hac vice applications pending*

Date: December 21, 2022

45

EXHIBIT 1

# Unauthorized Access to Internal Computer Network at Connexin Software, Inc.

Connexin Software, Inc. (Connexin), a provider of electronic medical records and practice management software, billing services, and business analytic tools to pediatric physician practice groups, is providing notice that an unauthorized third party was able to gain access to an internal computer network.   The live electronic medical record was not accessed and the incident did not affect any pediatric practice groups' systems, databases, or medical records system at all.

On August 26, 2022, Connexin detected a data anomaly on our internal network.  We immediately launched an investigation and engaged third-party forensic experts to determine the nature and scope of the incident.  On September 13, 2022, we learned that an unauthorized party was able to access an offline set of patient data used for data conversion and troubleshooting.  Some of that data was removed by the unauthorized party.  The live electronic record system was not accessed in this incident, and the incident did not involve any physician practice group's systems, databases, or medical records system at all.  Connexin is not aware of any actual or attempted misuse of personal information as a result of this event.

The patient information may have included: (1) patient demographic information (such as patient name, guarantor name, parent/guardian name, address, email address, and date of birth); (2) Social Security Numbers ("SSNs"), (3) health insurance information (payer name, payer contract dates, policy information including type and deductible amount and subscriber number); (4) medical and/or treatment information (dates of service, location, services requested or procedures performed, diagnosis, prescription information, physician names, and Medical Record Numbers); and (5) billing and/or claims information (invoices, submitted claims and appeals, and patient account identifiers used by your provider). Please note that not all data fields may have been involved for all individuals.  Information of a parent, guardian, or guarantor may also have been impacted by the incident.

Data security is very important to us.  As soon as we discovered the incident, we immediately took action to stop the unauthorized activity.  This included a password reset of all corporate accounts and moving all patient data used for data conversion and troubleshooting into an environment with even greater security. Connexin also retained a third-party cybersecurity forensic firm to investigate the issue and is working with law enforcement to investigate the incident.  In response to this incident, Connexin has enhanced its security and monitoring as

well as further hardened its systems as appropriate to minimize the risk of any similar incident in the future.

The enclosed Reference Guide includes additional information on general steps you can take to monitor and protect your child's personal information.  We encourage you to carefully review credit reports and statements sent from providers as well as your insurance company to ensure that all account activity is valid; any questionable charges should be promptly reported to the provider's billing office, or for insurance statements, to your insurance company.

If your child's SSN was impacted, Connexin has arranged to offer your child identity monitoring services for a period of one year, at no cost to you, through Kroll (our third party vendor).  You have 6 months from the date of your notice letter to activate these services, and instructions on how to activate these services are included in your notice letter.

Individuals who may have been impacted by this event are being mailed notices. Since it is possible there may be insufficient or out-of-date contact information for some individuals whose information was impacted, this notice is also accessible via Connexin's website at https://www.officepracticum.com/substitute-notice/ and the affected physician practice groups' websites, consistent with HIPAA.

If you have any questions about this matter or would like additional information, please refer to the enclosed Reference Guide, or call toll-free 855-532-0912.  This call center is open from 8:00am – 5:30pm CT, Monday through Friday, excluding some U.S. holidays.

We sincerely regret and apologize that this incident occurred.  Connexin takes the security of personal information seriously, and we will continue to work diligently to protect the information entrusted to us.

This notice is being provided on behalf of the following physician practices/practice groups:

| | |
|---|---|
| ABC Pediatrics Practice, PC | Kidswood Pediatrics, Inc. |
| Academy Pediatrics, PA | Kidzcare Pediatrics, PC |
| Advanced Care Pediatric Centre, PLLC | KION Pediatrics, PLLC |
| Alice Tanner, M.D., PC | Kressly Pediatrics, PC |
| All Star Pediatrics, LLC | Lilac City Pediatrics, PA |
| Angel Kids Pediatrics | Madison Pediatric Associates, PC |

Arlington Pediatric Partners, PLLC
d/b/a Kids Docs Pediatrics

Ascension Medical Group f/k/a
Pediatric Associates, PA

August Pediatrics, PA

Austex Pediatrics, PA

Bristow Pediatrics, PLLC

Cecilia A Nwankwo, M.D. FAAP, PC

Carolina Pediatrics and Adolescent
Care, PA

Casey Thomas Mulcihy Austin Texas,
PA

Central Coast Pediatrics, Inc.

Children's Clinic, Ltd.

Children's Health Center of
Columbus, Inc.

Children's Health of Ocala, PA

Children's Mercy – Pediatric
Partners, Inc.

Children's Mercy – Shawnee Mission
Pediatrics

Children's Pediatric Center Northside,
LLC

Community Pediatrics, SC

Cordova Pediatrics, PLLC

Crockett Kids Pediatrics, PC

Discovery Pediatrics, Inc.

Maria Luisa Lira, M.D., PA

Mariano D. Cibran, M.D., Inc. d/b/a St.
Petersburg Pediatrics

Maryland Pediatric Care, LLC

Maryvale Pediatric Specialists, LLC

Mayura Madani, M.D., PLLC

McComb Children's Clinic, Ltd.

Northeast Pediatric Night Clinic, Inc.

Oregon City Pediatrics

Orland Children's Center, Inc.

Passaic Pediatrics II, PA

Pediatric Associates, PSC

Pediatric Associates of Lawrenceville,
LLC

Pediatric Care Center No. 2, Inc.

Pediatric Center for Wellness, PC

Pediatric Health Center of El Paso

Pediatric Healthcare Associates of
McKinney

Pediatric Medicine of Cartersville, PC

Pediatric MultiCare West, LLC

Pediatric Physicians of Reston, PC

Pediatrics East, PC

Peds First Pediatrics

Pensacola Pediatrics PA

Petoskey Pediatrics PC

Dr. Michael J Ulich Pediatrics, LLC

Drexel Hill Pediatric Associates, PC

Eastern Carolina Pediatrics, PA

Eastern Shore Children's Clinic, PC

Ekta Khurana, M.D., PLLC

Emily B. Vigour, M.D., LLC d/b/a
Vigour Pediatrics

Ennis Pediatric and Adolescent
Health Care, PA

Forest Hill Pediatrics, LLC MD

Fox Pediatrics, PLLC

Fraser-Branche Medical, PLLC

Gaurang Patel, M.D., LLC

Gold Pediatrics, PA

Goldsboro Pediatrics, PA

Goodlettsville Pediatrics, PC

Graham Pediatrics of Woodstock, LLC

Great Bend Children's Clinic, PA

Harbor Pediatrics, PS

Hatboro Pediatrics, PC

Hawthorne Pediatrics, LLC

Hebron Pediatrics, LLC

Heights Pediatrics, PC

Helena Pediatric Clinic, PC

Holmdel Pediatrics, LLC

Phillips Pediatrics, PC

Premiere Pediatrics, PLLC

QC Kidz Pediatrics, PLLC

Rachel Z. Chatters, M.D., Inc

Raleigh Group, PC

Rankin Children's Group, PLLC

Raza Ali, MD, PC

Reading Pediatrics, Inc.

Renaissance Pediatrics, P.C.

Ruth Agwuna, M.D.

Samuel R Williams, M.D., PA

San Marino Pediatric Associates

SchoolCare, Inc. f/k/a CareDox, Inc.

SCS LLC d/b/a Bayshore Pediatrics

Sistema Infantil Teleton USA, Inc.
a/k/a CRITS

South River Pediatrics, LLC

Springfield Medical, LLC

Sumter Pediatrics, LLC

Texoma Pediatrics, PLLC

The Pediatric & Adolescent Clinic, Inc.

The Pediatric Center of Frederick, LLC

Thomasville-Archedale Pediatrics,
PLLC

Thompson River Pediatrics and
Urgent Care, LLC

| | |
|---|---|
| Honeygo Pediatrics, LLC | Valley Children's Medical Group |
| Jackson Pediatric Associates, PA | Virginia Pediatric Group, Ltd. |
| Jaleh Niazi, M.D., PC d/b/a New Day Pediatrics | Watch Us Grow Pediatrics, PC |
| James A. Weidman, AMC | We Care Pediatrics, PC |
| Jose F. Alvarado & Associates, PA | Wee Tots Pediatrics, PA |
| Kate Bowers, M.D., PLLC d/b/a Firefly Pediatrics | Westview Pediatric Care, LLC |
| Kerrville Pediatrics, PLLC | Winsted Pediatrics |
| Kids First Pediatric Care, PA | Yazji Pediatrics |
| Kids Kare Pediatrics, PLLC | Zero Pediatrics, PLLC |
| Kids World Pediatrics, LLC | |

## Reference Guide

### Review Your Account Statements

Carefully review statements sent to you from providers as well as from your insurance company to ensure that all of your account activity is valid. Report any questionable charges promptly to the provider's billing office, or for insurance statements, to your insurance company.

### Provide any updated personal information to your health care provider

Your health care provider's office may ask to see a photo ID to verify your identity. Please bring a photo ID with you to every appointment if possible. Your provider's office may also ask you to confirm your date of birth, address, telephone, and other pertinent information so that they can make sure that all of your information is up-to-date. Please be sure and tell your provider's office when there are any changes to your information. Carefully reviewing this information with your provider's office at each visit can help to avoid problems and to address them quickly should there be any discrepancies.

### Order Your Free Credit Report

To order your free annual credit report, visit www.annualcreditreport.com, call toll-free at
(877) 322-8228, or complete the Annual Credit Report Request Form on the U.S. Federal
Trade Commission's ("FTC") website at www.ftc.gov and mail it to Annual Credit Report
Request Service, P.O. Box 105281, Atlanta, GA 30348-5281.  The three credit bureaus provide
free annual credit reports only through the website, toll-free number or request form.

Upon receiving your credit report, review it carefully.  Look for accounts you did not open.  Look
in the "inquiries" section for names of creditors from whom you have not requested credit.
Some companies bill under names other than their store or commercial names; the credit
bureau will be able to tell if this is the case.  Look in the "personal information" section for any
inaccuracies in information (such as home address and Social Security Number).

If you see anything you do not understand, call the credit bureau at the telephone number on
the report.  Errors may be a warning sign of possible identity theft.  You should notify the
credit bureaus of any inaccuracies in your report, whether due to error or fraud, as soon as
possible so the information can be investigated and, if found to be in error, corrected.  If there
are accounts or charges you did not authorize, immediately notify the appropriate credit
bureau by telephone and in writing.  Information that cannot be explained should also be
reported to your local police or sheriff's office because it may signal criminal activity.

### How to Activate Kroll Identity Monitoring Services

As a safeguard, we have arranged for you to activate, at no cost to you, in online identity
monitoring services provided by Kroll.

To activate this service, please the instructions for activation in your notice letter.

The monitoring included in the membership must be activated to be effective. You have until
 6 months from the date of your notice letter to activate these services. Please note that
identity monitoring services may not be available for individuals who do not have an address
in the United States (or its territories) and a valid Social Security number. Activating this
service will not affect your credit score.

We encourage you to take advantage of these protections and remain vigilant for incidents of
fraud and identity theft, including regularly reviewing and monitoring your credit reports and
account statements.

### Contact the U.S. Federal Trade Commission

If you detect any unauthorized transactions in any of your financial accounts, promptly notify
the appropriate payment card company or financial institution. If you detect any incidents of

identity theft or fraud, promptly report the matter to your local law enforcement authorities, state Attorney General and the FTC.

You can contact the FTC to learn more about how to protect yourself from becoming a victim of identity theft by using the contact information below:

Federal Trade Commission

Consumer Response Center

600 Pennsylvania Avenue, NW

Washington, DC 20580

1-877-IDTHEFT (438-4338)

www.ftc.gov/idtheft/

## Place a Fraud Alert on Your Credit File

To protect yourself from possible identity theft, consider placing a fraud alert on your credit file. A fraud alert helps protect against the possibility of an identity thief opening new credit accounts in your name. When a credit grantor checks the credit history of someone applying for credit, the credit grantor gets a notice that the applicant may be the victim of identity theft. The alert notifies the credit grantor to take steps to verify the identity of the applicant. You can place a fraud alert on your credit report by calling any one of the toll-free fraud numbers provided below. You will reach an automated telephone system that allows flagging of your file with a fraud alert at all three credit bureaus.

|          |                      |              |                    |
|----------|----------------------|--------------|--------------------|
| Equifax  | P.O. Box 105069      | 800-525-6285 | www.equifax.com    |
|          | Atlanta, Georgia     |              |                    |
|          | 30348                |              |                    |
|          |                      |              |                    |
| Experian | P.O. Box 2002        | 888-397-3742 | www.experian.com   |
|          | Allen, Texas         |              |                    |
|          | 75013                |              |                    |

| TransUnion | P.O. Box 2000 | 800-680-7289 | www.transunion.com |
|---|---|---|---|
|  | Chester, PA 19016 |  |  |

## Security Freezes

You have the right to request a credit freeze from a consumer reporting agency, free of charge, so that no new credit can be opened in your name without the use of a PIN number that is issued to you when you initiate a freeze.  A security freeze is designed to prevent potential credit grantors from accessing your credit report without your consent. If you place a security freeze, potential creditors and other third parties will not be able to get access to your credit report unless you temporarily lift the freeze. Therefore, using a security freeze may delay your ability to obtain credit.

Unlike a fraud alert, you must separately place a security freeze on your credit file at each credit bureau. To place a security freeze on your credit report you must contact the credit reporting agency by phone, mail, or secure electronic means and provide proper identification of your identity. The following information must be included when requesting a security freeze (note that if you are requesting a credit report for your spouse, this information must be provided for him/her as well): (1) full name, with middle initial and any suffixes; (2) Social Security number; (3) date of birth; (4) current address and any previous addresses for the past five years; and (5) any applicable incident report or complaint with a law enforcement agency or the Registry of Motor Vehicles. The request must also include a copy of a government-issued identification card and a copy of a recent utility bill or bank or insurance statement. It is essential that each copy be legible, display your name and current mailing address, and the date of issue.

Below, please find relevant contact information for the three consumer reporting agencies:

| Equifax Security Freeze | P.O. Box 105788 | 888-298-0045 | www.equifax.com |
|---|---|---|---|
|  | Atlanta, GA 30348 |  |  |

| Experian Security Freeze | P.O. Box 9554 | 888-397-3742 | www.experian.com |
|---|---|---|---|
|  | Allen, TX 75013 |  |  |

TransUnion              P.O. Box 160        888-909-8872        www.transunion.com

Woodlyn, PA

19094

Once you have submitted your request, the credit reporting agency must place the security freeze no later than 1 business day after receiving a request by phone or secure electronic means, and no later than 3 business days after receiving a request by mail.  No later than five business days after placing the security freeze, the credit reporting agency will send you confirmation and information on how you can remove the freeze in the future.

### For Residents of the District of Columbia

You may contact the D.C. Attorney General's Office to obtain information about steps to take to avoid identity theft:

D.C. Attorney General's Office, Office of Consumer Protection, 400 6th Street, NW, Washington DC 20001, 1-202-442-9828, www.oag.dc.gov.

### For Residents of Iowa

You may contact law enforcement or the Iowa Attorney General's office to report suspected incidents of identity theft. The Iowa Attorney General's Office can be reached at:

Iowa Attorney General's Office, Director of Consumer Protection Division, 1305 E. Walnut Street, Des Moines, IA 50319, 1-515-281-5926, www.iowattorneygeneral.gov.

### For Residents of Maryland

You may also obtain information about preventing and avoiding identity theft from the Maryland Office of the Attorney General:

Maryland Office of the Attorney General, Consumer Protection Division, 200 St. Paul Place, Baltimore, MD 21202, 1-888-743-0023, http://www.marylandattorneygeneral.gov/.

### For Residents of Massachusetts

You have the right to obtain a police report with respect to this incident.  If you are the victim of identity theft, you also have the right to file a police report and obtain a copy of it.

### For Residents of New Mexico

New Mexico consumers have the right to obtain a security freeze or submit a declaration of removal.

You may obtain a security freeze on your credit report to protect your privacy and ensure that credit is not granted in your name without your knowledge. You may submit a declaration of removal to remove information placed in your credit report as a result of being a victim of identity theft. You have a right to place a security freeze on your credit report or submit a declaration of removal pursuant to the Fair Credit Reporting and Identity Security Act.

The security freeze will prohibit a consumer reporting agency from releasing any information in your credit report without your express authorization or approval.

The security freeze is designed to prevent credit, loans and services from being approved in your name without your consent. When you place a security freeze on your credit report, you will be provided with a personal identification number, password or similar device to use if you choose to remove the freeze on your credit report or to temporarily authorize the release of your credit report to a specific party or parties or for a specific period of time after the freeze is in place. To remove the freeze or to provide authorization for the temporary release of your credit report, you must contact the consumer reporting agency and provide all of the following:

(1) the unique personal identification number, password or similar device provided by the consumer reporting agency;

(2) proper identification to verify your identity; and

(3) information regarding the third party or parties who are to receive the credit report or the period of time for which the credit report may be released to users of the credit report.

A consumer reporting agency that receives a request from a consumer to lift temporarily a freeze on a credit report shall comply with the request no later than three business days after receiving the request. As of September 1, 2008, a consumer reporting agency shall comply with the request within fifteen minutes of receiving the request by a secure electronic method or by telephone.

A security freeze does not apply in all circumstances, such as where you have an existing account relationship and a copy of your credit report is requested by your existing creditor or its agents for certain types of account review, collection, fraud control or similar activities; for use in setting or adjusting an insurance rate or claim or insurance underwriting; for certain governmental purposes; and for purposes of prescreening as defined in the federal Fair Credit Reporting Act.

If you are actively seeking a new credit, loan, utility, telephone or insurance account, you should understand that the procedures involved in lifting a security freeze may slow your own applications for credit. You should plan ahead and lift a freeze, either completely if you are shopping around or specifically for a certain creditor, with enough advance notice before you apply for new credit for the lifting to take effect. You should contact a consumer reporting agency and request it to lift the freeze at least three business days before applying. As of September 1, 2008, if you contact a consumer reporting agency by a secure electronic method or by telephone, the consumer reporting agency should lift the freeze within fifteen minutes. You have a right to bring a civil action against a consumer reporting agency that violates your rights under the Fair Credit Reporting and Identity Security Act.

### For Residents of New York

You may also obtain information about security breach response and identity theft prevention and protection from the New York Attorney General's Office:

Office of the Attorney General, The Capitol, Albany, NY 12224-0341, 1-800-771-7755, www.ag.ny.gov.

### For Residents of North Carolina

You may also obtain information about preventing and avoiding identity theft from the North Carolina Attorney General's Office:

North Carolina Attorney General's Office, Consumer Protection Division, 9001 Mail Service Center, Raleigh, NC 27699-9001, 1-919-716-6000, www.ncdoj.gov.

### For Residents of Oregon

State laws advise you to report any suspected identity theft to law enforcement, as well as the Federal Trade Commission. Contact information for the Oregon Department of Justice is as follows:

Oregon Department of Justice, 1162 Court Street NE, Salem, OR 97301, 1-877-877-9392, www.doj.state.or.us.

### For Residents of Rhode Island

You have a right to file or obtain a police report related to this incident. You may also obtain information about preventing and avoiding identity theft from the Rhode Island Office of the Attorney General:

Office of the Attorney General, 150 South Main Street, Providence, RI, 02903, 1-401-274-4400, www.riag.ri.gov.